# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PRANEETH MANUBOLU,<br><br>Defendant | Case No. 1:19-CR-184-JAW |

## **DEFENDANT'S SENTENCING MEMORANDUM**

NOW COMES Defendant, by and through undersigned counsel, and hereby submits the following Sentencing Memorandum.

### **Introduction**

On August 30, 2019, nearly three years ago now, Defendant Praneeth Manubolu ("Praneeth") was driving way too fast and under the influence of alcohol when he crashed his vehicle in Acadia National Park, killing his three passengers. Praneeth's blood alcohol content was .09% and, for reasons unclear to this day, he was traveling substantially in excess of the speed limit of 25 miles per hour on a winding road. Praneeth pled guilty earlier this year to multiple manslaughter counts, operating under the influence counts, and unsafe operation. He and he alone is 100% responsible for what happened in the early morning hours of August 30, 2019, which resulted in the deaths of three people.

1

But Praneeth is more than the person who committed these crimes. Praneeth has zero criminal record of any kind, much less any motor vehicle history, or really any history of any kind of wrongful behavior. He is the proverbial "straight arrow." He grew up in a loving family, and after years of schooling in India, came to the United States and successfully completed a master's degree and went on to success as a software engineer. Unlike so many defendants before this Court, Praneeth is someone who has always strived to do what is right, worked hard and focused on others and not himself, and has been a devoted son, brother, and nephew. Though Praneeth acknowledges that he must be punished for the crimes he committed, he asks for justice tempered by mercy.

## Praneeth's Background

U.S. Probation Officer Laflin has done her usual exemplary job in detailing in the Presentence Report Praneeth's personal background. As noted in the Presentence Report, Praneeth is now 31 years old. He was born, raised, and went to school through college in India.

After graduating from college in India with a bachelor's degree in engineering, Praneeth worked for a short period of time at IBM in India before obtaining a student visa to come to the United States to attend a master's program in software engineering at Marist College in New York. Praneeth graduated from that program and obtained his master's degree in 2018, and then went on to a successful job as a software engineer at Aeongo Technologies. Praneeth lost that job after this incident because he was not able to go to work as he was incarcerated from August 31, 2019, until September 20, 2019, when he was ultimately released on an unsecured bond. Praneeth was able to secure another job as a

2

software engineer, this time with Cognizant Technology Solutions, where he works remotely, to this day.

Praneeth is very close to his family. He lived with his family all the way through the time that he was in India. When he came to the United States, there was of course significant culture shock, compounded by Praneeth's very modest, almost shy, nature. Praneeth is very unassuming, a quiet person, and but for his uncle and brother in Georgia, he has had very little interaction with really anyone outside his work. Indeed, it was Praneeth's attempt to establish social connections that led him to his fateful trip to Acadia National Park with the three victims, who Praneeth had met through the "Meetup" app.

Since the accident, Praneeth has been able to live in Georgia with his brother who has helped Praneeth with the overwhelming guilty Praneeth felt because of what he did. Praneeth's uncle has also been a strong and consistent support for Praneeth. Praneeth still remains close to his parents and maternal grandmother, and they speak daily via video. To this day, Praneeth's mother is unaware of what happened, the family having withheld this information from her given her medical condition and concern that the news would break her heart, figuratively, but given her medical condition, somewhat literally.

Since the accident, Praneeth has struggled with deep depression, and yet he has refused any treatment for this because it is his view that he must bear the full yoke of his wrongdoing as a punishment. He repeatedly expressed shortly after the accident that he should have been the one that died and not the three others. There is no convincing Praneeth of anything other than this, to this day. Praneeth has tried to live his best, most remorseful life since the accident, knowing that his judgment day will come with this

3

Court's sentencing, he will be incarcerated, and he will return to India[1], likely never to be able to return to the United States again.

## Offense Conduct

Just what happened on the night of August 29, 2019, through the early morning hours of the following day is not in any dispute. The Presentence Report correctly summarizes what happened and, combined with the police report submitted by the Government as a sentencing exhibit, and the First Circuit's recitation of the facts in its opinion (drawn from this Court's factual findings from the Motion to Suppress), it is clear that Praneeth and the three victims in this case met up that evening at Acadia, Praneeth having driven from New Jersey that day. They all went out into Bar Harbor, were all drinking and dancing, and Praneeth ended up driving from Bar Harbor as he was considered to be the least intoxicated. Praneeth was driving far too fast where driving that fast was clearly dangerous. Praneeth is not a reckless person by nature, and he has no explanation, much less any distinct memory, as to how it was that he was driving 75 miles per hour shortly before the crash. Praneeth had too much to drink, certainly too much to be driving, and his blood test revealed as much when it showed that his blood alcohol content was .09%. Praneeth's three new friends were killed upon impact. Miraculously, Praneeth survived with minimal injuries. There is not a single day that goes by that Praneeth does

---

[1] As noted in the Presentence Report, Praneeth is eligible for participation in the International Prisoner Transfer Program, such that Praneeth would serve any period of incarceration in India and not the United States. 18 U.S.C. secs. 4100-4115; 28 CFR sec. 0.96(b). Praneeth wishes to be considered for that Program and this Court's recommendation that he be allowed to be transported accordingly. Regardless of whether he is allowed to participate in this Program, Praneeth will be deported as a result of his convictions here.

not think about his actions that night and the plain, simple, and terrible fact that he caused the deaths of three people.

## Comparative Sentencing

The Government has offered several examples of state cases and one federal case that "may help to inform the court's determination as to an appropriate sentence." Government's Memorandum at 3. The Government correctly notes that "each case is unique and stands on its own facts." Id.

To this end, comparative sentences are virtually impossible to use without full and complete detail as to the offense, the defendant, and the likely hundreds of pages of documents that describe each individual case. Indeed, the Government referenced the case of State v. Joseph Roleau at page 4 of its Memorandum. This case is one that is familiar to counsel for Defendant because counsel for Defendant actually represented Mr. Roleau in his 2009 prosecution in Kennebec County Superior Court for manslaughter. The facts and circumstances of that collision, which caused the death of a camp counselor at Camp Laurel in Mt. Vernon, Maine, were unique in terms of how the accident happened, where it happened, and the fact that Mr. Roleau had a prior OUI conviction, which was repeatedly referenced by the court at the sentencing, and the victim impact, which was presented at the sentencing and which Justice Mills commented on repeatedly at the sentencing. Mr. Roleau's conduct immediately after the accident, the location of the crash on the opposite side of the roadway, and the sentencing court's views about Mr. Roleau, all drove the significant sentence that was imposed. This is not to say this particular sentence should not have been referenced; rather, it simply illustrates that no two crimes, nor any two

defendants, can be looked at in the same way, and certainly not without far more detail than a single paragraph summary. The fact that all but one case referenced is a state court case is important given this Court's reluctance in other matters to compare the sentencing apples of state court to the federal court's sentencing oranges.

Indeed, the United States Sentencing Guidelines were established to, among other things, address disparities in sentencing amongst similarly situated defendants charged in similar crimes with common characteristics. And those Guidelines provide a basic reference point for this Court's consideration at sentencing.

### **Praneeth's Remorse**

As noted in paragraph 61 of the Presentence Report, Praneeth is "more concerned with how his actions and pending incarceration have and will impact others, including the families of the victims, and has little to no concern or himself." Paragraph 21 of the Presentence Report also quotes Praneeth's statement that he "lost the reason to live, all my passions and goals died on that day. While incarcerated due to the incident I broke down completely and couldn't stop begging God to return them every second. I did not have the courage to accept that I hurt many people and friends. I was at a point where I wanted to be punished or treated badly, but I couldn't accept when people in jail and everyone were [sic] being nice to me." Praneeth has regularly and consistently expressed to everyone involved in this matter that he feels he does not deserve any kindnesses that have been bestowed upon him, even such simple acts as holding the door for him or treating him with any degree of respect. No matter how many times anyone tells Praneeth that, despite what he did, he is still a good person, Praneeth refuses to believe it. He is simply that way.

One of the victim impact statements indicates that there is a view that Praneeth has "shown no remorse for the pain and grief he has caused to the families involved." It was unfortunate that this victim's family was never made aware of Praneeth's remorse as shown immediately after the accident, up until this day. Upon reviewing this statement, counsel for Defendant asked that Praneeth's statement to Probation be provided to the victims' families so that they would know Praneeth's true views.

### 18 U.S.C. sec. 3553 factors

Just what sentence is "sufficient, but not greater than necessary" in Praneeth's case is where, as always, the rubber meets the road. The court is left with the classic "two-handed" analysis in sentencing - on the one hand addressing a case involving a serious accident where three people were killed, and yet on the other hand there is Praneeth's acknowledgement and acceptance of everything he did, having lived a completely law-abiding and respectful life until this accident.

Certainly, this offense caused the most significant of harms insofar as three people were killed. The families have, understandably, expressed anger at what Praneeth did, though notably one victim's family has reflected that they do not wish to see Praneeth punished severely, an incredible act of forgiveness.

At the same time, this Court is faced with a defendant who comes before this Court as someone who did not go out on the night in question with any view that he would be committing any crimes, much less engage in any inappropriate behavior whatsoever. He arrived late, decided to go out with his new friends, and, thinking that he was okay to drive and being the least intoxicated of all of the individuals, committed a single act of aberrant

7

conduct. For the last nearly three years, he has withdrawn into himself and for a significant period of time, maybe even up to this day, believed that he wished he could take the place of the others and be the one that perished. This, of course, does not excuse any of his actions, but shows that Praneeth will live with what he did until his own dying day, and this is a sentence in and of itself. Praneeth will someday complete his term of incarceration and supervised release. But there is no question that Praneeth will never forget what he did and the terrible harm he caused.

Striking that careful balance, it would be fair and reasonable for this Court to impose the sentence of 24 months. This sentence would correctly take into account Praneeth's conduct, while also recognizing Praneeth and who he is. While this sentence would be below the guideline sentencing range of between 41 and 51 months, 18 months of incarceration for someone like Praneeth is no small sentence. Praneeth will be incarcerated after never being involved in any criminal mindset or even having any connection to people who have committed crimes. It is the quality of this sentence, rather than the quantity, which should guide this Court's sentence. An 18 month sentence would also provide notice to others that conduct like Praneeth's will not be countenanced and will result in severe penalties.

## Conclusion

There have been and will be entreaties that justice be served by sentencing Praneeth to a substantial term of imprisonment. Some of the families of the victims have asked this Court to impose just that, which is understandable. But Abraham Lincoln once noted that "mercy bears richer fruits than strict justice," and Shakespeare's Portia in *The Merchant of*

8

*Venice* spoke at length and poetically about how "the quality of mercy is not strained." Praneeth asks for this very mercy from this Court in imposing a sentence that is less than the Guideline sentencing range and takes into account all of who he is and has always been.

WHEREFORE, for the foregoing reasons, Defendant respectfully requests that this Court sentence him to 18 months of imprisonment.

Date:  June 22, 2022                                        /s/Walter F. McKee
                                                            WALTER F. MCKEE
                                                            McKee Law, P.A.
                                                            133 State Street
                                                            Augusta, ME.   04330
                                                            (207) 620-8294
                                                            *wmckee@mckeelawmaine.com*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:19-CR-184-JAW |
| | ) | |
| PRANEETH MANUBOLU | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2022, I electronically filed Defendant's Sentencing Memorandum with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following: United States Attorney's Office, Bangor, Maine.

Date: June 22, 2022

/s/Walter F. McKee
WALTER F. MCKEE
McKee Law, P.A.
133 State Street
Augusta, ME.  04330
(207) 620-8294
*wmckee@mckeelawmaine.com*